UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BRIAN HEBERT,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>THE LITIGATION DOCUMENT GROUP, INC., *et al.*,<br><br>　　　　　　Defendant. | Case No. 2:17-cv-01536-KJD-CWH<br><br>**ORDER** |

Before the Court is Defendants Litigation Document Group, Inc. and Craig Renard's Motion for Summary Judgment (#43). Plaintiff Brian Hebert responded (#46), and the Defendants replied (#47).

In this workplace-accommodations case, Hebert claims that his former employer, Litigation Document Group, and its owner, Craig Renard, failed to accommodate his disability and terminated his employment after he suffered a back injury in early 2015. Hebert brought three claims against Litigation Document Group: discrimination under the Americans with Disabilities Act, retaliation under the Americans with Disabilities Act, and wage deprivation. He also sued Renard individually under NRS § 112.190, Nevada's uniform fraudulent transfers act. Litigation Document Group and Renard now move for summary judgment on each of Hebert's claims. Beginning with the fraudulent transfer claim, Hebert has failed to present evidence of a creditor-debtor relationship between he and Renard. As a result, the Court grants summary judgment on Hebert's fraudulent transfer claim. As to Hebert's remaining claims, the Court finds that Litigation Document Group is subject to the ADA and that there is a genuine issue of material fact whether Litigation Document Group docked Hebert's final paycheck. Accordingly, the Court denies summary judgment on Hebert's ADA and wage-deprivation claims.

I. **Background**

Brian Hebert worked as a Customer Service Representative for The Litigation Document Group from January 2014 through February 2015. In early 2015, Hebert injured his back. Due to the injury, Hebert sought temporary workplace accommodations including shorter shifts and weight-lifting restrictions. Compl. 5, ECF No. 1. Litigation Document Group approved Hebert's initial accommodations request on February 11, 2015. The accommodations were valid for two weeks and would expire on February 25, 2015. Id. Just days before their expiration, Hebert asked to extend his accommodations for another month. Litigation Document Group refused and shortly thereafter eliminated the Customer Service Representative position. Id. Litigation Document Group offered Hebert a position as a delivery driver at sister-company Med-R, which Hebert declined. Id. Litigation Document Group then terminated Hebert's employment. Hebert brought this suit seeking declaratory relief and money damages. The parties have conducted discovery, and Litigation Document Group seeks summary judgment on each of Hebert's claims.

II. **Legal Standard**

Summary judgment works to isolate and dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). It is only available where there are no remaining issues of material fact, which allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322. The moving party must demonstrate the absence of material fact. The burden then shifts to the nonmoving party to produce specific evidence that demonstrates a genuine factual dispute for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of fact exists where the evidence would allow "reasonable jury [to] return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court makes all justifiable inferences in favor of the nonmoving party. Id. at 255. Yet, the party seeking summary judgment need only defeat one element of the claim or defense to prevail because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322.

**III.   Analysis**
   **A. Litigation Document Group is Subject to the Americans with Disabilities Act According to its Own Admission**

Hebert's first two claims arise out of the Americans with Disabilities Act, which prohibits discrimination on the basis of disability. Hebert argues that Litigation Documents Group's refusal to extend his initial accommodations coupled with his subsequent termination amount to discrimination and retaliation, which the ADA expressly prohibits. Litigation Document Group does not dispute the substance of Heber's factual allegations. Rather, its entire argument rests upon the assertion that it did not employ enough people to be subject to the ADA.[1] As a result, it argues that Hebert's ADA claims must fail. However, Litigation Document Group's answer already admitted that the business is subject to the ADA. See Answer 2, ECF No. 12. The Court sees no reason to discount that admission. Accordingly, it denies summary judgment.

The Americans with Disabilities Act remedies discrimination against disabled individuals. PGA Tour, Inc. v. Martin, 532 U.S. 661, 674 (2001). Through the ADA, Congress provided sweeping protections for the disabled and sought to "integrate them into the economic and social mainstream of American life." Id. at 675 (internal quotations omitted). To achieve its purpose, the Act forbids discrimination on the basis of disability in "major areas of public life," including: employment (Title I), pubic services (Title II), and public accommodations (Title III). Id. Title I applies here. It prohibits discrimination in the workplace "in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, and job training." 42 U.S.C. § 12112(a). It further forbids any "covered entity" from "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee." See 42 U.S.C. § 12112(a)–(b)(1). An employer's failure to provide reasonable accommodations to an employee's known physical or mental condition violates the Act. See id.

---

[1] Litigation Document Group's argument for summary judgment on Hebert's ADA claims—and its argument on the majority of Hebert's other claims—is conclusory and lacks citation to any legal authority. The entirety of its argument against Hebert's ADA claims is that the ADA simply does not apply. Def.'s Mot. Summ. J. 4, ECF No. 43 ("to prevail on [Hebert's ADA claim, Hebert] must show that the ADA applies in this matter. Here, LDG's payroll records and RENARD'S Declaration provide evidence that LDG never had 15 or more employees which means the ADA does not apply.").

§ 12112(b)(5)(A).

Despite these broad protections, the ADA's reach is not unlimited. Chapman v. Pier 1 Imports (U.S.), Inc, 631 F.3d 939, 946 (9th Cir. 2011). Title I extends the ADA's protections only to employees of "covered entities." 42 U.S.C. § 12112(a). Whether an employer is a "covered entity" depends in part upon the number of people it employs. The cutoff is fifteen. An employer "who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year" falls within the reach of the ADA. 42 U.S.C. § 12111(5)(A). In short, an employer with at least fifteen employees may be subject to the Act's prohibition on discrimination while a smaller employer who employs fewer than fifteen employees is not.

Hebert alludes to Title I's minimum-employee requirement in his complaint. There, he alleged, "Plaintiff was hired by Defendant as a Customer Service Representative on or about January 11, 2014. Upon information and belief and *at all relevant times, Defendant employed in excess of fifteen (15) employees for at least twenty (20) calendar weeks from 2014 to the present time*." Compl. 4, ECF No. 1 (emphasis added). Importantly, Hebert alleged that Litigation Document Group met the threshold number of employees to be subject to the ADA's reach. Until now, Litigation Document Group had not disputed Hebert's allegation. In fact, the employer's answer admits Hebert's allegation entirely and agreed that there were at least fifteen employees during Hebert's employment thereby subjecting the entity to the requirements of the ADA. See Answer 2–3.

Now, Litigation Document Group changes its tune. It contends that the business never employed fifteen employees for the requisite twenty-month period to fall within the ADA's requirements. Nine months after filing its answer—and after discovery closed—Litigation Document Group moved to amend its admission to the number of its employees. Magistrate Judge Hoffman recommended that the amendment be denied and found that neither Litigation Document Group nor Craig Renard demonstrated good cause to justify amendment. See R&R 3, ECF No. 48. Neither defendant filed objections to the Magistrate's recommendation, and this Court adopted the recommendation in full. See Order, ECF No. 49.

The Court deems admitted Hebert's allegation that at all relevant times, Litigation Document Group had enough employees to be subject to Title I of the ADA. It is within the Court's discretion to deem allegations admitted. Asea, Inc. v. S. Pac. Transp. Co., 669 F.2d 1242, 1245 (9th Cir. 1981). A defendant's failure to deny an allegation or its failure to exercise due diligence before denying the allegation is cause to admit that allegation. Id. Although Asea dealt with requests for admission under Rule 36, its underlying premise—that the Court may construe a failure to deny as an admission—also applies to the defendant's answer. Rule 8, which governs the admissions and denials in responsive pleadings, echoes Asea and Rule 36. It clarifies that a defendant's failure to deny an allegation in a required responsive pleading, results in admission of the allegation. Fed. R. Civ. P. 8(b)(6).

The Court construes Litigation Document Group's admission that it has employed enough people to be subject to the ADA as a failure to deny under Rule 8. It may not relitigate that issue now. Litigation Document Group has possessed this employment information from the very beginning. Renard knew at the time he filed his answer whether the business employed fifteen or more people for the preceding twenty months. Yet, he admitted Hebert's allegation entirely. Making matters worse, the timing of Litigation Document Group's eventual motion to amend prejudiced Hebert. Litigation Document Group filed its answer in September 2017, and discovery closed in May 2018. At no point during that time did it seek to amend the admissions in its answer. By waiting to seek amendment until after the close of discovery, Litigation Document Group prevented Hebert from exploring whether Title I of the ADA applied at all. Why would Hebert have pursued discovery on that issue when the answer already admitted it? As a result, the Court finds that Title I of the ADA applies to Litigation Document Group.

Moreover, even if the Court did not deem Litigation Document Group's answer admitted, there would still be a genuine issue of fact whether it employed fifteen employees over the requisite time period. This question of fact would preclude summary judgment. The inconsistencies between Litigation Document Group's admissions in its answer and the evidence purporting to show employment of fewer than fifteen employees could allow a reasonable jury to conclude that at the time of Hebert's employment, the business employed enough people to be

subject to Title I of the ADA. Therefore, the Court denies summary judgment on Hebert's ADA claims.

### B. There Is a Genuine Issue of Fact Whether Litigation Document Group Deprived Hebert of his Increased Wages in his Final Paycheck

Litigation Document Group next moves for summary judgment on Hebert's claim for wage deprivation. The basis of Hebert's claim is that he received a promotion and pay raise shortly before his termination but that Litigation Document Group refused to pay him his increased rate in his post-termination paycheck. During Hebert's annual performance review in January of 2015, he claims that he received a promotion and a pay raise. Hebert's next paycheck reflected the increased salary. His final paycheck, however, was missing the increased rate. The total amount missing from Hebert's final paycheck was $460.00. See Pl. Resp. to Mot. Summ. J., Exh. 3 at 4 ¶ 1–13, ECF No. 46-3 (Hebert Deposition).

The entirety of Litigation Document Group's argument for summary judgment is that Hebert "has not presented any evidence to support his allegations that he was deprived of wages and benefits." Def. Mot. Summ. J. 4, ECF No. 43. The Court disagrees. Hebert's deposition testimony provides at least testimonial evidence to support his allegations of wage deprivation. Admittedly, Hebert could have provided more compelling evidence that his final paycheck was short, such as an employment contract or paystubs reflecting the discrepancy in his salary. However, summary judgment does not require the best evidence; it merely requires some admissible evidence demonstrating an issue of fact. Hebert's deposition testimony is enough to create an issue of fact rendering summary judgment inappropriate. Accordingly, the Court denies summary judgment on Hebert's wage-deprivation claim.

### C. There is No Evidence That Renard Fraudulently Transferred Assets to Avoid a Debt Owed to Mr. Heber

Finally, Litigation Document Group moves for summary judgment on Hebert's fraudulent transfer claim under NRS § 112.190. NRS § 112, otherwise known as Nevada's Uniform Fraudulent Transfers Act, was "designed to prevent a debtor from defrauding creditors by placing the subject property beyond the creditors' reach." Herup v. First Boston Fin., LLC, 162 P.3d 870, 872 (Nev. 2007). The Act prohibits debtors from transferring or obscuring otherwise-available assets solely to avoid paying creditors. See US Bank Nat'l. Assoc. v. BDJ

Inv., LLC, No. 2:16-cv-00866-GMN-PAL, 2018 WL 4705525 (D. Nev. Sep. 29, 2018). Inherent in the Act is creditor-debtor relationship between the parties. See id., NRS § 112.190.

Here, there is no evidence that Hebert and Renard formed a creditor-debtor relationship. An employer-employee relationship is not enough to create liability under NRS § 112.190. Similarly, Hebert presents no evidence that Renard transferred assets solely to avoid satisfying some debt owed to Hebert. Hebert seems to concede this point in his opposition. Not only did he fail to present evidence of a creditor-debtor relationship and fraudulent transfer, he declined to respond to Renard's arguments at all. As a result, the Court finds no genuine issue of material fact and grants summary judgment on Hebert's fraudulent transfer claim.

**IV.  Conclusion**

Accordingly, it is **HEREBY ORDERED** that Defendants' Motion for Summary Judgment (#43) is **GRANTED IN PART and DENIED IN PART**.

Dated this 28th day of January, 2019.

_____
Kent J. Dawson
United States District Judge